IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ABDUL ALANI,

    Plaintiff,

v.

ALASKA AIRLINES, INC.,
CORPORATE DOES 1–20, and
INDIVIDUAL DOES 21–40, inclusive,

    Defendants.

No. C 10-02766 WHA

**ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this action for national origin employment discrimination, defendant Alaska Airlines moves for summary judgment on all claims. For the reasons set forth below, defendant's motion is **GRANTED**.

## STATEMENT

Plaintiff Abdul Alani is a United States citizen born in Baghdad, Iraq. He became a naturalized citizen in 1992 and worked for defendant Alaska Airlines as an airline avionics technician for ten years before he was terminated in July 2008 (Alani Decl. ¶¶ 2–3). As an avionics technician, he performed scheduled maintenance on aircraft, made repairs, and completed required inspections (Kinder Decl. ¶ 6). Plaintiff is a practicing Muslim and while working for defendant sometimes prayed using a prayer rug during his breaks (Alani Decl. ¶ 5).

1    To ensure the safety of its aircraft, defendant participated in several programs with the
2    FAA, including the Voluntary Self-Disclosure Program and the Aviation Safety Action Program
3    (Lovas Decl. ¶ 7). Under VSDP, defendant can avoid civil penalties for Federal Aviation
4    Regulations violations by voluntarily notifying the FAA whenever it discovers a possible FAR
5    violation (Def. Exh. 3). The purpose of ASAP is to encourage air carrier employees to
6    "voluntarily report safety information that may be critical to identifying potential precursors to
7    accidents" (Def. Exh. 5). Under this program, technicians who make an error can submit an
8    ASAP report to the Event Review Committee. The ERC is made up of one representative each
9    from the Aircraft Mechanics Fraternal Association, defendant, and the FAA. The ERC reviews
10   the report and determines an appropriate outcome and corrective action (Lovas Decl. ¶¶ 8, 10).
11   The FAA may choose to conduct an independent investigation of an event disclosed in such a
12   report (Def. Exh. 6).

### 1. EMPLOYMENT INCIDENTS IN 2005.

On two occasions in 2005, plaintiff submitted ASAP reports. In March 2005, plaintiff entered the incorrect code into the database used to track maintenance service and submitted an ASAP report. The ERC closed the report and sent plaintiff to Back-to-Basics training (Def. Exh. 10). In August 2005, plaintiff submitted an ASAP report stating that due to pressure to finish a repair quickly, he forgot to check required inspection items (Def. Exh. 13). ERC closed this ASAP report with no further action.

### 2. INCIDENTS IN 2007 AND 2008.

Plaintiff was involved in several incidents during the 17 months preceding his termination.

#### A. Installation of Altimeter.

On February 19, 2007, plaintiff made an error while installing an altimeter on an aircraft. Plaintiff was held over after his eight-hour graveyard shift had ended to install the altimeter (Alani Decl. ¶ 8). The next day, plaintiff submitted an ASAP report stating that he installed the altimeter "without checking the effictiviy [sic] of the part" (Def. Exh. 14). In this context, "checking the effectivity" means verifying that the part being installed is effective for the

2

1 specific aircraft (Def. Exh. 15). Defendant notified the FAA that an incorrect altimeter was
2 installed in San Francisco and that the altimeter was found to be ineffective the next day in
3 Portland and replaced (Def. Exh. 16). Defendant then investigated this incident and released
4 a report in March 2007. Plaintiff was counseled on the violation and given an oral warning.
5 He was also ordered to attend training sessions about checking for effectivity (Def. Exh 19).

### B. Replacement of a Pitot Probe.

On February 25, 2007, plaintiff was asked to replace a pitot probe — a pressure instrument that is used to measure the velocity of aircraft in flight (Alani Decl. ¶ 9; Knobloch Decl. ¶ 15). It was raining and windy that night, and plaintiff requested that hangar space be made available for him to work, but the lead mechanic on duty told him "that was not possible and said that [plaintiff] had to do the work at the gate exposed to the elements." Plaintiff performed the replacement according to chapter 27 of the Alaska Airlines manual, which he believed to be the correct chapter. Alaska technician Wilbert Mason inspected plaintiff's work, and "apparently also believed that [chapter 27] was the correct chapter to follow." Neither plaintiff nor Mason thought "to check Chapter 34 of the [manual] because Chapter 27 did not cross-reference Chapter 34" (Alani Decl. ¶ 9).

In April 2007, the FAA notified defendant that it would begin investigating the pitot probe incident (Def. Exh. 22). Defendant conducted its own investigation and found that plaintiff had "relied on prior experience to complete the task instead of following the [manual] references he had printed to accomplish the task" (Def. Exh. 24). The investigation further found that plaintiff had failed to follow the correct procedure when replacing the pitot probe, and had he done so "he would have discovered that the manual references he used were incorrect" (Def. Exh. 24). Plaintiff received a written warning as a result of the incident, and Mason received an oral warning (Def. Exh. 23; Sommers Dep. 60).

### C. Replacement of the Heads-Up Guidance System.

In December 2007, plaintiff replaced a Heads-Up Guidance System unit, which provides a display that pilots use in low-visibility weather (Alani Decl. ¶ 10; Knobloch Decl. ¶ 15). The removed HGS unit was then shipped to Seattle by Stores Agent Gerald Washington and

3

1    installed in an aircraft by technician Tom Hudak (England Exh. J-5). Pursuant to defendant's
2    tracking tag policy, each unit shipped is affixed with a tracking tag that identifies if the part is
3    serviceable. A yellow sticker on the tag indicates serviceability. If the sticker is removed, a
4    green dot is exposed to indicate that the unit is unserviceable and cannot be installed in another
5    aircraft (Kinder Decl. ¶ 9). The HGS unit installed by Hudak in Seattle was an unserviceable
6    unit (England Exh. J-5).

7    Defendant conducted an investigation of the incident. Plaintiff reported to his supervisor
8    that he was "not sure whether or not [he] pulled the yellow tag off" (Alani Dep. 207).
9    Plaintiff received an oral warning, and "was also informed that any similar incident could
10   result in further disciplinary action up to and possibly including termination" (Def. Exh. 29).
11   Neither Hudack nor Washington were disciplined (Washington Dep. 47; England Exh. J-5).

### D. Installation of Incorrect Battery.

13   In July 2008, an unserviceable battery was erroneously installed in an aircraft.
14   Plaintiff was assigned a maintenance job on that aircraft, and technician Michael Podgorski
15   was assigned the job of replacing the main battery on the same aircraft (Alani Decl. ¶ 11).
16   Podgorski retrieved the battery from the storeroom, loaded it onto a dolly, and wheeled it to
17   the gate for installation. At that point, Podgorski did not verify if the battery was serviceable,
18   its part number, the maintenance manuals, or the effectivity of the part (Podgorski Dep. 24–28).
19   Plaintiff helped Podgorski install the battery, then checked the voltages to make sure it was
20   charging. Plaintiff believed that Podgorski had checked the effectivity of the battery (Alani
21   Decl. ¶¶ 11–12).

22   Plaintiff swears that he entered the battery part number into the computer system, and
23   a "forced parts" alert screen was briefly displayed. Plaintiff checked the number and entered
24   it again, and the screen froze and went black. Plaintiff claims that the computer system in use
25   at the time "frequently generated false 'forced parts' alerts, most [of which] were [the] result
26   of glitches in the system" (*id.* at ¶¶ 12–13, 15).

27   On July 9, technicians in Seattle discovered that the incorrect battery had been installed
28   (Def. Exh. 36). The following day, defendant notified the FAA of the incident pursuant to

4

VSDP (Def. Exh. 41). Defendant also conducted an investigation (Knobloch Decl. ¶ 17). Plaintiff submitted an ASAP report on July 14 explaining that Podgorski had pulled the incorrect battery from the storeroom, but that he had "confidence in [his] co-worker that he did not do this intentionally" (Def. Exh. 43). Plaintiff met with his supervisor that same day. He was informed that he would be removed from service pending investigation of the incident (Def. Exhs. 44, 45).

### 3. PLAINTIFF'S TERMINATION.

On July 30, plaintiff was terminated. The notice of discharge stated that plaintiff was terminated due to the incident in July 2008 involving the battery, the incident in December 2007 involving the HGS unit, and the incident in February 2007 involving the altimeter. Additionally, the notice stated that during the investigation of the battery incident, it was discovered that plaintiff had been clocked in at Alaska Airlines and at his second job at American Airlines simultaneously on three occasions (Def. Exh. 46).

Plaintiff was a member of the Aircraft Mechanics Fraternal Association. In November 2008, plaintiff informed his union representative that he intended to file a complaint of discrimination with the California Department of Fair Employment and Housing (Alani Decl. ¶¶ 20–21). The AMFA also submitted a grievance on behalf of plaintiff (Alani Exh. C). A termination hearing was held in August 2008, and plaintiff was represented by the AMFA (Def. Exh. 52). In September 2008, the decision to terminate plaintiff was upheld (Kinder Decl. ¶ 16).

The AMFA appealed this decision to the System Board of Adjustment in October 2008 (Def. Exh. 53). Hearings were held in June and August 2010. In December 2010, the System Board of Adjustment released a decision upholding plaintiff's termination (Def. Exh. 54).

### 4. THE SUSPENSION OF PLAINTIFF'S CERTIFICATE.

In September 2008, the FAA interviewed plaintiff as part of its investigation of the battery incident. Plaintiff claims that following this conversation, he "understood that the FAA was satisfied with [his] explanation of the event and did not intend to take certificate action against" him (Alani Decl. ¶ 21). In December 2008, however, plaintiff received a letter from the

5

1 FAA informing him of its intent to suspend his technician's certificate (Def. Exh. 63). In March
2 2009, the FAA suspended plaintiff's certificate for 30 days (Def. Exh. 66).

### 5. PROCEDURAL HISTORY.

Plaintiff initiated the present action in April 2010, alleging employment discrimination based on national origin and retaliation. In July 2010, defendant filed counterclaims for conversion, fraud, intentional misrepresentation, and unjust enrichment (Dkt. No. 8). In May 2011, an order granted defendant's motion to dismiss its own counterclaims and denied plaintiff's motion for judgment on the pleadings (Dkt. No. 43). Defendant now moves for summary judgment on both of plaintiff's claims. This order follows full briefing, including a sur-reply, and a hearing.

### ANALYSIS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory statements without factual support cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Where, as it is here, the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

### 1. DISCRIMINATION BASED ON NATIONAL ORIGIN.

California has adopted the three-stage burden shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. *Guz v. Bechel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000). To evaluate claims of

6

intentional discrimination where intent itself is generally impossible to prove, courts apply the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). The analysis consists of three steps. *First,* the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Second*, if the plaintiff has established a prima facie case, a presumption of discrimination arises. The burden shifts to the employer to rebut this presumption by producing admissible evidence that its action was taken for a legitimate, nondiscriminatory reason. *Third*, if the employer sustains this burden, the presumption of discrimination disappears. The plaintiff then has the opportunity to attack the employer's proffered reasons as pretext for discrimination or to offer any other evidence of discrimination. *Guz*, 24 Cal. 4th at 354–56.

To make a prima facie showing of discrimination under the *McDonnell Douglas* test, plaintiff must provide evidence that: (1) he is a member of a protected class; (2) he was qualified for his position and was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably, or some other circumstance surrounding the adverse employment action gives rise to an inference of discrimination. *Hawn v. Executive Jet Mgmt*., *Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

Plaintiff has provided insufficient evidence to establish a prima facie case of discrimination because neither the second nor the fourth elements has been met. Each element is addressed in turn.

### A. Plaintiff Is Unable to Show Satisfactory Job Performance.

Plaintiff has not proved that he was performing his job satisfactorily. He does not dispute that he was responsible for the error involving the altimeter (Def. Exh. 14). Nor does he dispute that he incorrectly installed a pitot probe only days later, but rather shifts the blame to defendant's manual. Plaintiff claims that his supervisor referred to the manual entry as "confusing." Plaintiff is correct, but he selectively cites the record. His supervisor's entire statement was that "although the [manual] was confusing, [plaintiff] should have used the Chapter 27 reference for replacing and checking the pitot probe." He was also advised to double

check his references, and "if he was unsure of what reference to use, take the time to find out, even if it means asking someone" (Def. Exh. 21). Further, defendant's investigation of the incident revealed that plaintiff relied on his prior experience in replacing the pitot probe, *not* defendant's manual. Had he followed the incorrect manual entry step-by-step, "it is likely that he would have noticed the reference to be incorrect due to steps being called out that would have nothing to do with the Feel Pitot System" (Def. Exh. 24).

Plaintiff provides no evidence that he was not the cause of the HGS unit error. Plaintiff testified that shortly following the incident, he told his supervisor that he was "not sure whether or not [he] pulled the yellow tag off" (Alani Dep. 207). Plaintiff now swears that "[a]t this time, [his] memory is not clear about events, but [he] reported them accurately at the time to [his] supervisor" (Alani Decl. ¶ 10). Plaintiff fails to provide any evidence that he removed the yellow tag and is unable to say with any direct memory if he remembers doing so.

Plaintiff also is unable to provide evidence that he played no part in the error involving the battery. Plaintiff argues that defendant admits Podgorski's actions in the incident were a "contributing factor" to the error (England Exh. H-3). While that may be so, plaintiff admits that a "forced parts" screen appeared when he attempted to verify the battery part number, after which the computer froze. Despite the fact that such screens had been falsely generated in the past, plaintiff was plainly alerted to a potential error and offers no evidence that he investigated the situation further or reported the computer problems to a supervisor.

While it may be true that portions of the blame for the four events that preceded plaintiff's termination may be attributable to other employees, plaintiff is the clear-cut common denominator in all of the incidents. Serious mishaps clustered to plaintiff to an unusual extent.

### B. Plaintiff Cannot Show that Similarly Situated Individuals Were Treated More Favorably.

Plaintiff also fails to establish that similarly situated individuals outside of his protected class were treated more favorably than he was treated. Plaintiff fails to identify *any* reasonable comparator who committed four errors and was not terminated. While plaintiff provided the names of ten employees who he claims committed errors more serious than him and with greater safety implications who were not terminated, plaintiff has been unable to provide coherent

8

1  details any of these events (Def. Exh. 69; Alani Dep. 344–52). Of the ten employees named,
2  plaintiff is also unable to identify any who made more than a *single* serious error each, let alone
3  *four* errors.

4  Plaintiff establishes that the other technicians involved in his various errors were treated
5  differently from how he was treated. He fails, however, to establish that these employees were
6  similarly situated to him.

7  The decision of our court of appeals in *Hawn v. Executive Jet* is instructive. In *Executive*
8  *Jet*, the plaintiffs were male pilots who were terminated for alleged sexual harassment of female
9  flight attendants. Even though there was considerable evidence that the flight attendants had
10 initiated and participated in some of the inappropriate behavior, the court of appeals held that
11 they were not similarly situated to the pilots because unlike the pilots, the flight attendants'
12 conduct never gave rise to complaints of sexual harassment. 615 F.3d at 1160.

13 In the present action, plaintiff's conduct gave rise to more than complaints — it gave rise
14 to warnings and discipline. The conduct of the other technicians involved in the incidents did
15 not have any such consequences. Neither Washington nor Hudak were disciplined after the HGS
16 unit incident (Washington Dep. 47; England Exh. J-5). Plaintiff provides no evidence that
17 either Washington or Hudak had previous errors on their records at the time of the HGS incident.
18 Podgorski was verbally counseled following the battery incident (Mordy Exh. A). Plaintiff
19 claims that Podgorski also committed at least one serious error in the past, but the incident
20 plaintiff refers to occurred "approximately ten years ago" (Podgorski Dep. 52).

21 In sum, plaintiff fails to provide any comparator who was similarly situated to him.
22 Nor did any technician have as many errors on his record as plaintiff.

23 Plaintiff has also failed to provide any other evidence of discrimination. Plaintiff does
24 not claim that *any* disparaging comments were made to him regarding his national origin during
25 the ten years that plaintiff worked for defendant. Plaintiff nevertheless argues that defendant
26 specifically targeted him for termination by scrutinizing his time records in order to find other
27 errors to "pad" its insufficient reasons for terminating him. Plaintiff claims that defendant knew
28 that he worked a second job. He swears that he did not intentionally clock in at both jobs at once

9

1    or receive double pay as a result.  He also swears that he attempted to correct the error after one
2    such accident, but that the log book was missing (Alani Decl. ¶ 18).  Plaintiff argues that
3    defendant's dishonest motive in pulling his time records is evidenced by the conflicting
4    explanations that were given for the decision to examine the records.  George Knobloch,
5    who made the decision to terminate plaintiff, testified that he asked that plaintiff's time
6    records be examined to try to better understand the battery incident (Knobloch Dep. 29–30).
7    Sonia Alvarado, another of defendant's employees, first testified that it was her idea to pull
8    plaintiff's time records, then later stated that the legal department suggested the idea (Alvarado
9    Dep. 103, 164–65).

10   Despite this minor inconsistency, plaintiff fails to provide *any* evidence that defendant's
11   investigation preceding his termination was tainted by discrimination based on his national
12   origin.  Plaintiff fails to explain why a decision to examine all circumstances surrounding
13   plaintiff's four errors — including his time records — was motivated by discrimination based
14   on plaintiff's national origin.  As an aviation technician, plaintiff was responsible for repairing
15   and maintaining aircraft that transported hundreds every day.  Errors in the course of this serious
16   work could have catastrophic results.  The investigation of such errors should be extremely
17   thorough, and plaintiff fails to demonstrate that the exploration of time records is an
18   unreasonable or unusual step to take.  Plaintiff admits that he inadvertently violated defendant's
19   time policy (Alani Decl. ¶ 18).  He fails to explain why including that violation — in addition to
20   his four other errors — as a reason for his termination is a reflection of discrimination.

21   Finally, this order assumes that Knobloch was aware of plaintiff's national origin.
22   Nonetheless, plaintiff fails to provide *any* evidence that Knobloch's decision to terminate him
23   was based on national origin.

24   Plaintiff provides insufficient evidence to make a prima facie showing of discrimination
25   based on national origin.  Accordingly, defendant's motion for summary judgment as to the
26   discrimination claim is **GRANTED**.

### 2. RETALIATION CLAIM.

In order to establish a prima facie case of retaliation, plaintiff must show: (1) he was engaged in "protected activity;" (2) defendant subjected plaintiff to an adverse employment action; and (3) a causal link existed between the protected activity and defendant's actions. If plaintiff is able to establish a prima facie case of retaliation, the burden shifts to defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. If defendant is able to do so, the burden again shifts to plaintiff to demonstrate that the retaliation was intentional. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

The parties do not dispute that plaintiff engaged in protected activity by filing a complaint with the DFEH. Plaintiff claims that defendant retaliated against him as a result by causing the FAA to suspend his certificate. Defendant argues that it did not subject plaintiff to an adverse employment action because the FAA suspended plaintiff's certificate, not it, and that it did nothing to cause the FAA to suspend plaintiff's certificate.

Plaintiff provides insufficient evidence that defendant was the cause of his certificate suspension. Plaintiff's argument that a "temporal nexus" existed between the events is unpersuasive. He claims that the timing was suspicious because he filed the DFEH complaint in November 2008, and the FAA suspended his certificate in December 2008. The FAA interviewed him regarding the battery incident in September 2008 (Def. Exh. 62). Plaintiff indicated that following the interview, it was his subjective belief that "the FAA was satisfied with [his] explanation of the event and did not intend to take certificate action against" him (Alani Decl. ¶ 21). Plaintiff fails to explain why he felt confident no certificate action would be taken. The FAA's report following the interview contained no such promise (Def. Exh. 62). Plaintiff implies that defendant acted in some way to influence the FAA's decision after he filed his DFEH complaint. But plaintiff fails to show any evidence that defendant was in any way involved in the suspension of plaintiff's certificate. Accordingly, defendant's motion for summary judgment on the retaliation claim is **GRANTED**.


## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is **GRANTED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 13, 2011.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE